**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

GWEN PERKINS                                                                                              PLAINTIFF

V.                                              2:13CV00051-JJV

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                                                    DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Gwen Perkins, appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claims for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act (the "Act"). For reasons set out below, the decision of the Commissioner is AFFIRMED.

**I.      BACKGROUND**

On February 20, 2008, Ms. Perkins protectively filed for SSI benefits due to lupus, rheumatoid arthritis, asthma, and a leg ulcer. (Tr. 46, 51, 52, 212) Her claims were denied initially and upon reconsideration. At Ms. Perkins's request, an Administrative Law Judge ("ALJ") held a hearing on January 19, 2010, where Ms. Perkins appeared with her lawyer. (Tr. 28) At the hearing, the ALJ heard testimony from Ms. Perkins and a vocational expert ("VE"). (Tr. 29-39)

The ALJ issued a decision on April 22, 2010, finding that Ms. Perkins was not disabled under the Act. (Tr. 72-82) On December 5, 2011, the Appeals Council granted Ms. Perkins's request for review, and remanded the case to "ensure that any objection or request submitted in response to proffered evidence is addressed in a formal ruling, either n the decision or by separate order, and ensure that such a ruling is made part of the record." (Tr. 88)

A second hearing was held on September 14, 2012, where the ALJ heard testimony from Ms. Perkins and a VE. (Tr. 40-66)

The ALJ issued a decision on November 26, 2012, finding that Ms. Perkins was not disabled under the Act. (Tr. 12-22) The Appeals Council denied Ms. Perkins's request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1-3)

Ms. Perkins, who was thirty-four years old at the time of the second hearing, has a ninth grade education. (Tr. 47) She has no past relevant work. (Tr. 62)

## II.   DECISION OF THE ADMINISTRATIVE LAW JUDGE[1]

The ALJ found that Ms. Perkins had not engaged in substantial gainful activity since February 20, 2008, and she had the following severe impairments: lupus, asthma, rheumatoid arthritis, and a persistent decubitus ulcer on the right lower extremity. (Tr. 14) However, the ALJ found that Ms. Perkins did not have an impairment or combination of impairments meeting or equaling an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2] (Tr. 16)

According to the ALJ, Ms. Perkins has the residual functional capacity ("RFC") to perform light work, but there could be only occasional balancing, crouching, stooping, kneeling, crawling, and climbing, and she would need to avoid all concentrated exposure to extreme heat and cold, fumes, odors, dusts, other pulmonary irritants, and certain hazards such as unprotected heights and dangerous, moving machinery. (Tr. 17) The VE testified that the jobs available with these limitations were ticket seller[3] and cashier. (Tr. 62-63)

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) (2005).

[2] 20 C.F.R. §§ 416.920(d), 416.925, and 416.926.

[3] The ALJ's opinion erroneously lists "cafeteria attendant." (Tr. 22)

After considering the VE's testimony, the ALJ determined that Ms. Perkins could perform a significant number of jobs existing in the national economy, and found that Ms. Perkins was not disabled.

## III.   ANALYSIS

### A.   Standard of Review

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision." *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Id*. (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006)).

### B.   Ms. Perkins's Arguments for Reversal

Ms. Perkins asserts that the Commissioner's decision should be reversed because it is not support by substantial evidence. Specifically, Ms. Perkins contends that the ALJ (1) erred because Ms. Perkins meets the listing in 14.02; (2) erred because Ms. Perkins would have attendance problems because of treatment; (3) lacked substantial evidence to support his findings; and (4) "erred in his consideration of Ms. Perkins's obesity." (Doc. No. 13)

#### 1.   Listing 14.02

Ms. Perkins argues that the ALJ erred because she meets the requirements of Listing 14.02, which reads:

> Systemic lupus erythematosus. As described in 14.00D1. With:
> A.    Involvement of two or more organs/body systems, with:
>     1.    One of the organs/body systems involved to at least a moderate level of severity; and
>     2.    At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).
> or
> B.    Repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>     1.    Limitation of activities of daily living.
>     2.    Limitation in maintaining social functioning.
>     3.    Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpart P, App. 1, Listing 14.02.

As for part A, Ms. Perkins contends that she meets the listing, because she has rheumatoid arthritis and anemia. (Doc. No. 13) She points to no evidence that would contradict the ALJ's finding that neither of these conditions rise to the "moderate level of severity." In fact, it appears they are adequately controlled with medication. Additionally, on June 23, 2009, the doctor noted "no systemic manifestations relating to" lupus. (Tr. 805) In October 2011, "the only thing active in regards to her lupus is arthritis." However, the doctors treated this simply by increasing Ms. Perkins's medications. (Tr. 989)

But even if Ms. Perkins could establish that she met part A-1, there is no evidence in the record to support A-2. Though she claims some fatigue, there is no indication that it is severe, and occasionally she reports to the doctor with fever, but that tends to be sporadic. Neither malaise or involuntary weight loss appear to be issues, nor do any other constitutional issues or signs. Plaintiff has pointed out evidence to the contrary.

As for part B none of the limitations listed reach the marked level. While it is clear that Ms. Perkins has some limitations, they do not rise to the "marked" level required by the listing. For example, doctors have noted repeatedly that Ms. Perkins is able to ambulate independently – on

4

October, 15, 2008, April 30, 2010, December 2011, January 2012, and December 10, 2012, to name a few dates. (Tr. 576, 597, 1322, 1903, 1913, 1936)  Also, there is no indication that Ms. Perkins has issues with social functioning. (Tr. 463)

    2.    Attendance

Ms. Perkins contends that the ALJ erred because the record demonstrates she would be unable to keep her attendance at a full time job, due to ongoing treatment.  As pointed out in his opinion, the ALJ discounted Ms. Perkins's credibility, and concluded that her conditions were not as severe as she indicated.  To support his position, he pointed to the fact that she "put forth suboptimal effort" on a consultative exam in July 2008. (Tr. 18)  The doctor noted that "[patient] wouldn't try very hard." (Tr. 406)

There also is a history of failing to comply with treatment recommendations.  For example, her doctor noted in June 2008 that she failed to increase one medication and failed to take the other, as prescribed. (Tr. 449)  Additionally, from January through May 2012, doctors noted that Ms. Perkins was not complying with treatment, not keeping appointments, and not allowing home health into her home. (Tr. 912, 913, 917)

Additionally, the ALJ noted that Ms. Perkins "was independent with bathing, dressing, grooming, and feeding." (Tr. 20)  As noted above, typically, she was also able to ambulate independently.  At her first ALJ hearing, she testified that she cooked meals a few times a day, which some times took her between an hour and hour and a half, depending on what she was cooking. (Tr. 38)  Finally, the ALJ noted that treatment has been routine and/or conservative. (Tr. 20)

Accordingly, the ALJ had substantial evidence to question Ms. Perkins's credibility.

    3.    Substantial Evidence

Ms. Perkins asserts that the ALJ's decision is unsupported by substantial evidence, and points

5

out all the factors that work in her favor – in 2009 and 2011 she had been unable to walk for a few weeks and she has used a cane and a walker. (Doc. No. 13) However, the issue is not whether there is substantial evidence to support the opposite outcome – that is, that Ms. Chesser is disabled – but, rather, was there substantial evidence to support the ALJ's decision. *Davis v. Apfel*, 239 F.3d 962 (8th Cir. 2001) ("We may not reverse merely because substantial evidence also exists that would support a contrary outcome, or because we would have decided the case differently.").

As set out in the immediately preceding section, the ALJ had substantial evidence to support his position and to question Ms. Perkins's credibility.

        4.        Obesity

Ms. Perkins contends that the ALJ erred in finding her obesity non-severe. Ms. Perkins argues that the ALJ "failed to address Plaintiff's disc bulges with mild canal stenosis as well as facet changes and mild foraminal narrowing in the lumbar spine, which would be co-morbidities of obesity." (Doc. No. 13) The records referred to by Ms. Perkins indicate that at the L2-L3 "there is a small broad-based disc bulge." At L3-L4, "there is a small broad-based disc bulge with some facet hypertrophic which causes some very mild central canal stenosis. No appreciable neural foraminal narrowing is identified." (Tr. 1735) That being so, the ALJ could fairly discount this alleged impairment because the medical evidence fails to show it would significantly limit her ability to perform work activities.

**IV.**    **CONCLUSION**

The Court has reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence. There is sufficient evidence in the record as a whole to support the Commissioner's decision.

Accordingly, the Commissioner's decision is affirmed and Ms. Perkins's Complaint is

dismissed with prejudice.

    IT IS SO ORDERED this 13th day of August, 2014.

                                    _____
                                    JOE J. VOLPE
                                    UNITED STATES MAGISTRATE JUDGE